## Ledford v. Magowan's Administrator.

(Decided November 29, 1929.)

728

JOHN G. WINN and E. C. O'REAR for appellant.

W. C. HAMILTON for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

J. R. Magowan as administrator of Emma G. Magowan sued H. C. Ledford to recover certain articles of furniture. He was successful, and Ledford appeals.

Mrs. Magowan died intestate on October 4, 1925, and 15 days thereafter J. R. Magowan qualified as administrator of her estate. She owed about $650, and the only estate she left was some personal property which was appraised at $465.50.

At the time of her death she was living on a farm, which had belonged to her husband, John T. Magowan, who died many years before she did, and this farm had been sold and was at her death owned by H. C. Ledford.

The administrator was not very active in selling off this property and settling this estate, and Ledford began to insist on possession. About March 1, 1926, Ledford moved in and took possession under some sort of an arrangement with the administrator. They are unable now to agree just what was the arrangement they made or to agree at all.

Ledford claims he purchased this furniture outright for $300 and gave the administrator the right to repurchase it within six months, which he never did, and, after the expiration of over a year, Ledford sold a portion of this furniture for $650. Thereupon Magowan brought this suit to recover possession of the property.

Magowan's contention is that he simply borrowed $300 from Ledford, due in six months, and left with him the furniture; that both before and after the expiration of that time he asked about and obtained from Ledford extensions of this time; and that he never consented for Ledford to sell any of this furniture.

Ledford and Magowan agree about nothing, and each denies everything the other says. About the only thing on which they approach an agreement is that in

July, 1926, they made the following written memorial of their agreement:

"Mt. Sterling, Ky., July 28, 1926.

"This is to certify that I have this day sold to H. C. Ledford all of the household goods as Administrator also the kitchen furniture that is now on the place includes every thing except the pictures and books for the sum of $200.00 Two Hundred which is now to be paid. I J. R. Magowan have the privilege to redeam this property any time in the next six months at same price. Mr. Ledford will take the best care he can of this property and will not sell anything until the six months is out.

"J. R. Magown."

They do not entirely agree about this paper as Ledford insists the words "at same price" have been added since the paper was executed.

This memorandum is not all we have; there are two checks in this record that throw much light on this transaction.

"Mt. Sterling, Ky., July 28, 1926.

"Pay to the order of Judge E. W. Senff $200.00 Two Hundred Dollars for J. R. Magowan for Mrs. Emma Magowan Administrator

"H. C. Ledford by D. R. Ledford

"To the Traders' National Bank, Mt. Sterling, Ky."

"Mt. Sterling, Ky., July 28, 1926.

"Pay to the order of J. R. Magowan $100.00 One Hundred Dollars For farming implements and buggie horse

"H. C. Ledford by D. R. Ledford.

"To the Traders' National Bank, Mt. Sterling, Ky."

Before discussing these, we want to say that, though this furniture had been appraised at only $296.50, yet the proof shows it is very valuable antique furniture and worth between $3,000 and $4,000 and that Ledford has sold six pieces of it for $650.

By the judgment appealed from, Ledford is required to deliver to the administrator the furniture that has not been sold and to pay him the $650 received for the furniture he sold, less the $300 he let him have when this arrangement was made.

From that judgment Ledford appeals, and is complaining of the failure of the court to uphold this transaction in toto, and Magowan has prosecuted a cross-appeal and is complaining because the court required Ledford to pay him $650 for the six pieces of furniture he had sold instead of requiring him to deliver to him the pieces themselves.

Both are asking us to say just what sort of a contract this memorandum is—whether it is a conditional sale, as Ledford contends, or a mortgage, as is contended by Magowan.

We shall not say what this particular instrument is, but will give a name to this whole transaction. It is a fraud.

If it were not for the fact that Magowan is before us as administrator of this estate and that there are a lot of innocent and unpaid creditors, we would leave these men where we find them, but these creditors should not be made to suffer because of what these two men have undertaken to do.

Why we say this is a fraud: Ledford knew Magowan held this property as administrator of his mother, and he claims to have bought all of this furniture for $300, yet Magowan personally wanted to get $100 out of the deal, so, instead of writing $300 into his memorandum, $200 was inserted, and, when he gave his checks, he made $200 payable to the county judge, thus giving the creditors of this estate only two-thirds of what he was to pay and for the other $100 he gave a check to Magowan, noting therein that it was for "farming implements and buggie horse."

In his testimony he admits he got no farming implements, buggy, or horse from Magowan, does not claim he was to get such, and thus discloses this whole thing was a fraud by which he sought to enable Magowan to get for his personal use $100, and he hoped to get for $300 furniture shown to be worth ten times that sum, but the creditors were to get only $200.

He knew Magowan was arranging to filch $100 from this estate, and he actively helped him do so. Ledford

testified that Magowan said he had to have $100, and that he told him Judge Senff said this money had to apply on the debts of Mrs. Magowan. Magowan then suggested that a check for $100 be made for farming implements, etc., and Ledford did that. He then puts in evidence a purported settlement by Magowan as administrator of his mother, wherein he accounts for only $200 as the amount received for this furniture.

The contemplation of such trickery is saddening, and Ledford, in aiding and abetting it, is just as culpable as Magowan in its commission.

> "The representative's sale or pledge of assets or other transactions made for purposes other than the due discharge of his duty as fiduciary will not be sustained against the interests of the estate, where the person with whom he dealt had notice of his bad faith or breach of trust, and in such case the transaction may be set aside and restitution enforced." 24 C. J. p. 117, sec. 561.

The judgment is affirmed on both original and cross appeals.